## SUPREME COURT.

### No. 4.

THE PEOPLE, &c., agt. WILLIAM M. TWEED and others.

*Power of the court to order talesmen to fill a struck jury.*

Under the statute, this court possesses the same power to order the summoning of talesmen to complete the panel of a struck jury, that it has in the case of a common jury.

Where it appears that the sheriff is a party in interest in the action, although not of record, a coroner will be ordered to summon the tales jurors.

*New York Circuit, January 18, 1876 — Cause 2.*

MOTION to summon talesmen to fill the two vacancies in the Tweed jury.

*Wheeler H. Peckham & James C. Carter*, for plaintiffs.

*David Dudley Field & Field & Deyo*, for defendants.

WESTBROOK, *J.*—By the order of the court, a special jury was summoned for the trial of this cause. Of the twenty-four jurors selected in pursuance of the provisions of our statutes in regard to a struck jury, three were unable to serve in consequence of illness, one was incompetent by reason of non-residence, another was exempted by holding an office under the general government, the duties of which required his present time; seven, upon examination, were found to be incompetent on account of previously formed opinions, and two were challenged peremptorily by the defendant, thus leaving only ten jurors who are competent to serve as such. The plaintiff now moves for the summoning of talesmen, that two additional jurors to complete the panel

of twelve may be obtained. To this the counsel for Mr. Tweed object, upon the ground that the proceeding to try the cause by a special or struck jury must fail unless the entire twelve can be obtained from the twenty-four selected for that purpose. The objection is based principally upon section 50, of the title of which the special jury act forms a separate article, which (2 *vol. Edm. Edition of Statutes, page* 436) provides: " A jury shall be formed in the manner hereinafter directed, with respect to other juries, from the persons so summoned and appearing, who shall try the cause in which the struck jury shall have been ordered ; but the court shall have the same power to excuse or discharge any such juror as in other cases." It is argued that the entire jury must be selected " from the persons so summoned and appearing," and if it cannot be, then that mode of trial fails.

In considering this objection, we naturally ask, did the legislature intend, when they passed the act, that when a trial by a struck jury was ordered it should so be disposed of, or did they intend by one of the sections of such act to make the defeat of a trial in that way quite possible, if not very probable ? Considering, as they must have done, the uncertainty of human health and life, the possible legal excuses of some of the jurors summoned, and the probable incompetency of others, by reason of previously formed opinions or bias, the legislature surely must have seen that very often a cause must be in the same condition with the present one, and we can hardly suppose that they intended to say that the twelve jurors must be obtained out of the twenty-four when they knew it would oftentimes be impossible. A construction of one section of a general act which makes the whole frequently incapable of execution should not be adopted unless made necessary by its express, and no other to be interpreted, words. It is true that the statute directs that the jury shall be formed " from the persons so summoned and appearing," and it was necessary so to declare to give efficacy to the scheme, but it does not require an impossibility, nor does it declare that the

special jury shall fail if twelve be not obtained.   The argument
in favor of its failure is sustained only by treating article 3 of
title 4 of chapter 7 of part 3 of our Revised Statutes, entitled
" Of special juries," as separate and apart from the other articles
of that title.   That title (4) is entitled " Of the trial of issues
of fact."   Article first thereof contains " General provisions
concerning trials, and the proceedings preparatory thereto ; "
article second treats " Of the return and summoning of
juries," and article third " Of special juries."   Having pro-
vided for the proceedings preparatory to trial, next for the
drawing and summoning of the ordinary jury, and still next
for a special jury, the same title then by its fourth article
treats " Of trial and its incidents."   The first section of this
article, and in the statutes numbered as section 53 of the
title, provides for the trial of causes " by jurors drawn, sum-
moned, and returned in the manner hereinbefore directed ; "
that is to say, by a common jury, as provided by article 2,
or by a special jury, as provided by article 3.   The next
section then provides, " whenever a sufficient number of
jurors, duly drawn and summoned, do not appear, or cannot
be obtained to form a jury, the court may order the sheriff
to summon from the bystanders, or from the county at large,
so many persons qualified to serve as jurors as shall be suffi-
cient."   Two modes of drawing and summoning a jury had
been prescribed by the two previous articles.   The first sec-
tion of the next article provides for a trial by jurors sum-
moned by one or the other of these processes, and the next
section declares that " whenever a sufficient number of jurors
*   *   *   cannot be obtained " (and of course by either of
the two modes previously specified), " then talesmen can be
summoned."   Can language be plainer ?   The whole title
relates to one system, and all the various articles are con-
nected, and so reading them, there is no difficulty.   It is true
that parts of article four relate to ordinary juries, but these
do not alter, limit or curtail the effect of others.   The stat-
ute provides for talesmen " whenever " they are necessary

for the completion of a jury, and that exigency has now arisen.

I have not deemed it necessary, in the construction of our statutes, to refer to the English cases. The practice there seems to be well settled, when some of the special jury appear, to order talesmen to complete the jury, when necessary, and this is done despite the language of their statute, which is very similar to ours (*See proceedings against John Lambert and others for libel, in 22d vol. of Howell's State Trials, p. 954*). Our statutes have largely been borrowed from those of England, and from its common law, and as the rule was well settled there, both with and without its statute, to summon talesmen, it can hardly be supposed that our lawmakers intended to prohibit that which was there practiced, when they have not so expressly said. Refined and finely drawn arguments founded on British cases are, however, unnecessary, when our own law-makers have provided for tales "whenever" a jury cannot be obtained, when either of the two ways of obtaining one has been resorted to and failed.

The next question which the motion presents is, how must the additional jurors be obtained—by directing their summoning, or by drawing from the box and then summoning those who are drawn? The former is undoubtedly the mode, unless the statute we have quoted is repealed. It is conceded that various statutes passed since 1847 do not apply to the city of New York; but it is argued that chapter 495 of the laws passed during that year, entitled "An act in relation to jurors in the city of New York," has repealed the provisions of the Revised Statutes in regard to summoning talesmen. It certainly does not do so expressly; and repeals by implication are not favored, and are never allowed, unless the two statutes are in conflict. The act of 1847 is general, and provides a plan for the selection of the entire panel for the court. Those of the Revised Statutes were passed to meet a particular and special emergency which arises upon a single trial, and they were in addition to the other modes of selection,

and to be employed when the others failed. The act of 1847 was, I think, passed to supersede the general provisions of the Revised Statutes in regard to the obtainment of the ordinary jury; and if the various provisions of our Revised Statutes, in regard to the obtainment of a common jury, could exist with those in regard to tales, I do not see why this new general system, which supersedes the old, and that providing for talesmen, may not also co-exist.

The remaining question is, who should summon the talesmen? It is claimed that the sheriff of the city and county is a party to the suit, because, by his negligence, Tweed was allowed to escape, and as there was an order of arrest, he may be made liable. This, it is argued, makes the sheriff a party in fact, though not so on the record. The strength of this argument is somewhat doubtful. It does not appear that the property of Tweed may not be ample to meet the recovery, if one be had. Still, we can readily see, as the claim made is about $1,000,000, that the sheriff must feel a good deal of solicitude as to the result, and his feelings, at least, must be with the defense. Regarding him as honest, but still human, the court should not allow, unless so required, his duty and his interest to collide. Apart from any statute, the court has power to see its orders executed by a proper person. In this case it will exercise it by directing the summoning of tales by one of the coroners. Justice seems to me to require it, and the sifting process of examination will exclude any person who is unfit to serve as a juror.

A formal order was then signed, that a sufficient number of jurors not having been obtained for trial of the cause, and it appearing from the affidavit of Wheeler H. Peckham that the sheriff of New York is interested in the success of the defendant in this action, and in that sense an interested party, the court orders the coroners of the county, forthwith, to summon, from the body of the county, twenty-four persons liable to serve as jurors, from whom the required number shall be selected.